Filed 9/15/21  P. v. Gomez CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>GUSTAVO GOMEZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B307396<br>(Super. Ct. No. CR22052)<br>(Ventura County) |

Gustavo Gomez appeals the trial court's summary denial of his resentencing petition filed pursuant to Penal Code section 1170.95.[1]  We conclude that the record of conviction reflects that Gomez is ineligible for resentencing as a matter of law and that the failure to appoint counsel to represent him was harmless error.  (*People v. Lewis* (2021) 11 Cal.5th 952, 974 (*Lewis*).)  We affirm.

---

    [1] All statutory references are to the Penal Code unless otherwise stated.

*FACTUAL AND PROCEDURAL HISTORY*

In 1987, Gomez, a Colombian national, was convicted of second degree murder with a finding that he personally used a deadly and dangerous weapon, a knife, during commission of the murder. (§§ 187, subd. (a), 189, 12022, subd. (b).) The crime involved the murder of Gomez's erstwhile girlfriend following theft of Gomez's cocaine supply and cash by a friend of her family. Gomez fled to Colombia following the murder but later returned to the United States where he was arrested and tried. Following his conviction, he appealed. In an unpublished opinion, we rejected his contention that insufficient evidence supported his conviction, as well as a contention regarding a refused jury instruction pertaining to witness credibility. (*People v. Gomez* (B028955, May 17, 1988).)[2]

We derive the following summary from our previous opinion: Cheral Ann Hodges met Gomez in 1980 and began living with him in April 1981 in a Ventura condominium. Hodges and Gomez trafficked cocaine and Gomez also consumed it. They traveled to Hawaii and left the cocaine and cash with Hodges's mother. When they returned from Hawaii, they discovered a family friend took the cocaine and most of the cash. Gomez blamed Hodges's family and threatened that Hodges's sister "will pay [but] [n]ot with money." (*People v. Gomez, supra*, B028955.) On one occasion, Hodges's daughter saw Gomez strike her mother and, on another, noticed that her mother's face was bruised. Gomez also carried a .357 handgun.

---

[2] We grant the Attorney General's request to take judicial notice of our previous opinion as well as the murder jury instruction given at trial. (Evid. Code, §§ 459, subd. (a), 452, subd. (d).)

Hodges and Gomez obtained a red 1970 Chevrolet vehicle from Hodges's mother as partial payment for the stolen cocaine. In August 1981, Gomez leased an apartment for his sister. The apartment building manager saw Gomez enter and leave the complex on three occasions in the red Chevrolet.

In the afternoon of August 24, 1981, Gomez confirmed an airline flight to Colombia for himself. That evening, a passerby found Hodges's purse with her driver's license, checkbook, and cash near Gomez's sister's apartment. Gomez drove the red Chevrolet to the Los Angeles airport that evening and was a passenger on a late night flight to Bogota.

For nearly a week, Hodges's family attempted to contact her but she did not answer her telephone. Family members then entered the condominium and found Hodges's body. She had been stabbed repeatedly and struck in the head. The condition of her body indicated she had been dead for four to 10 days and died from a gaping knife wound to her neck that severed her carotid artery and trachea.

Bloody footprints in the kitchen and garage were consistent with the size and sole pattern of Gomez's shoes found in the dining room. There was also human blood on the accelerator pedal of the red Chevrolet. Gomez later admitted to a crime partner in an unrelated federal crime that he had stabbed Hodges to death. At trial, however, Gomez testified that he loved Hodges and was not involved in her murder.

The jury convicted Gomez of second degree murder and found that he had personally used a deadly and dangerous weapon. (§§ 187, subd. (a), 189, 12022, subd. (b).) The trial court sentenced Gomez to a prison term of 16 years to life, consecutive to a federal prison term he was serving. We affirmed the

conviction, rejecting Gomez's contention that Hodges was murdered by another unidentified person. We relied in part upon the evidence and reasonable inferences therefrom that Hodges's purse with important contents had been discarded near Gomez's sister's apartment, bloody footprints in the Ventura condominium were consistent with Gomez's shoes, and the accelerator pedal in the red Chevrolet contained human blood.

On May 4, 2020, Gomez filed a petition for resentencing pursuant to section 1170.95. Gomez checked most of the boxes on the form petition, alleging that he was charged and convicted of second degree murder pursuant to theories of felony murder or the natural and probable consequences rule. He further alleged that he was not the actual killer, did not aid or abet the murder with the intent to kill, was not a major participant in the felony, and did not act with reckless indifference to human life during commission of the crime. Gomez requested the appointment of counsel.

On August 14, 2020, the trial court summarily denied the petition, concluding that Gomez was ineligible for resentencing as a matter of law. Gomez was not then present in court nor was he represented by counsel. The court reviewed its file and our prior appellate opinion and concluded that Gomez "was the actual killer, was convicted of murder on a theory of being the direct perpetrator, and not on a theory of felony murder of any degree or a theory of natural and probable consequences."

Gomez appeals and contends that the trial court erred by concluding that he did not set forth a prima facie case for relief and not appointing counsel.

4

*DISCUSSION*

Gomez argues that the trial court's denial of his resentencing petition without appointing counsel or affording him an opportunity for briefing denied him the assistance of counsel and a fair hearing pursuant to section 1170.95 and the state and federal Constitutions.

In 2018, the Legislature amended the felony murder and the natural and probable consequences doctrines to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life. (Stats. 2018, ch. 1015, § 1, subd. (f); *People v. Gentile* (2020) 10 Cal.5th 830, 842.) The Legislature then amended sections 188 and 189, and added section 1170.95, to provide a procedure to persons previously convicted of murder pursuant to the felony murder or natural and probable consequences theories to obtain retroactive relief. (*Gentile*, at p. 853 ["the Legislature intended section 1170.95 to be the exclusive avenue for retroactive relief under Senate Bill [No.] 1437"].) To be eligible for resentencing, a defendant must establish that he "could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective" as part of Senate Bill No. 1437. (§ 1170.95, subd. (a)(3).)

Subdivision (a)(1)-(3) of section 1170.95 sets forth the requirements for a facially sufficient petition. Thus, the petitioner must state that the charging document allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; the petitioner was convicted of first or second degree murder; and the petitioner could not be convicted of first or second degree murder

5

because of changes to Section 188 or 189, as effective on January 1, 2019. Subdivision (b)(1)(A) of section 1170.95 describes where and how the petition must be filed and specifies its required content, including a declaration by petitioner that he or she "is eligible for relief under this section, based on all the requirements of subdivision (a)."

If the petition meets the requirements of section 1170.95, subdivisions (a) and (b), the trial court proceeds to subdivision (c) to assess whether a prima facie showing for relief has been made. In *Lewis*, *supra*, 11 Cal.5th 952, 957, our Supreme Court held that if a defendant files a facially sufficient petition and requests the appointment of counsel, the court must appoint counsel and entertain further briefing. Only after the appointment of counsel and the opportunity for briefing may the court consider the record of conviction to determine whether petitioner made a prima facie showing that he or she is entitled to relief. (*Id.* at pp. 969-970.)

The record of conviction relates to the trial court's inquiry, distinguishing petitions with potential merit from those clearly meritless. (*Lewis*, *supra*, 11 Cal.5th 952, 971.) In making its preliminary assessment regarding petitioner's allegations, the court does not engage in fact finding and must take petitioner's allegations as true. (*Ibid.* [prima facie bar set very low].) However, if the record of conviction, including the court's documents, refute the allegations in the petition, the court may make a credibility determination adverse to petitioner. (*Ibid.*)

Here Gomez's petition for resentencing met the requirements for sufficiency. In the petition Gomez also requested the appointment of counsel. The trial court erred, therefore, by summarily denying his petition without first

6

appointing counsel and accepting briefing.  (*Lewis, supra*, 11 Cal.5th 952, 969-970.)  *Lewis* nevertheless concluded that deprivation of a petitioner's right to counsel is state law error only, tested for prejudice by *People v. Watson* (1956) 46 Cal.2d 818.  (*Lewis*, at pp. 972-973.)  Moreover, any error in summarily denying a section 1170.95 petition may be harmless unless the petitioner can show "'"it is reasonably probable that if [he or she] had been afforded assistance of counsel his [or her] petition would not have been summarily denied without an evidentiary hearing.'"'"  (*Id*. at p. 974.)

We conclude that the trial court's error in failing to appoint counsel and accept briefing from both parties before considering the record of conviction and summarily denying the petition is harmless.  The record of conviction unequivocally establishes that Gomez was the actual killer.  The prosecution did not charge or rest upon any theories of a felony murder or natural and probable consequences doctrine.  Gomez cannot meet his burden of establishing a reasonable probability that the outcome of the proceeding would have been any different had the court appointed counsel and accepted briefing.  His argument that an unidentified person killed Hodges while he was in Colombia does not meet his burden of establishing statute eligibility, i.e., that he was charged and convicted pursuant to a felony murder or natural and probable consequences doctrine.  Gomez is ineligible for resentencing pursuant to section 1170.95 as a matter of law.

7

*DISPOSITION*

The order denying relief is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:


PERREN, J.


TANGEMAN, J.

Derek D. Malan, Judge

Superior Court County of Ventura

_____

Marta I. Stanton, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kathy S. Pomerantz, Deputy Attorney General, for Plaintiff and Respondent.